<pre>
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION
</pre>

DAVID M. SPELLBERG,

      Plaintiff,

v.                                    Case No: 2:13-cv-691-FtM-29CM

NEW YORK LIFE INSURANCE COMPANY,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on consideration of plaintiff David M. Spellberg's Motion for Summary Judgment (Doc. #50) and defendant New York Life Insurance Company's Motion for Summary Judgment (Doc. #51). Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment (Doc. #55) and plaintiff filed a Response to Defendant's Motion for Summary Judgment (Doc. #53).

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record establishes that the material facts are undisputed, but the parties disagree as to which party is entitled to judgment as a matter of law. The parties dispute whether a certain disability insurance policy requires defendant to pay plaintiff for certain expenses incurred after

plaintiff sold his medical practice but continued to work as an employee of the new owner. More specifically, the controlling issue is whether Dr. David Spellberg "incurred" eligible expenses during the claim period of July through December, 2012. For the reasons set forth below, the Court concludes that the eligible expenses were "incurred" by 21st Century Oncology, LLC, which was not an Insured Member, and therefore defendant is entitled to judgment.

## I.

The undisputed relevant facts based on the parties' Statements of Undisputed Material Facts[1] and the record are as follows:

**A. Disability Insurance Policy**

Effective April 1, 1997, defendant New York Life Insurance Company (defendant or New York Life) issued an automatically renewable Group Insurance Policy to the Trustees of the American College of Surgeons Insurance Trust, Policy No. G-29002-1 (the Policy) (Doc. #50, Ex. F.) Under the Policy, New York Life agreed to "pay the benefits of the Policy in accordance with its provisions." (Id., p. 1.)

Doctor David Spellberg (plaintiff or Dr. Spellberg) is an urologist who formerly owned and operated a solo medical practice

---

[1] See Doc. #50 and Doc. #55, ¶¶ 1-30; Doc. #51 and Doc. #53, ¶¶ 1-61.

2

known as Naples Urology Associates, P.A. (Naples Urology).  In 2004, Dr. Spellberg became an "Insured Member" within the meaning of the Policy[2], and has remained an Insured Member in good standing at all relevant times.

The Policy obligates New York Life to pay certain benefits to Insured Members who became Totally Disabled.  An Office Overhead Expense Insurance provision of the Policy provides that New York Life will pay a benefit for an Insured Member's "Covered Expenses," which are defined as:

> **Covered Expense** A Covered Expense is an Eligible Expense which an INSURED MEMBER incurs while insured under the Policy and while TOTALLY DISABLED, if such expense is: (a) outlined in the Eligible Expenses section; (b) not excluded in the Exclusions section; (c) a normal and customary expense of the INSURED MEMBER; and (d) generally accepted as tax deductible by the Internal Revenue Service.

(Doc. #51-1, Exh. A, p. 8; see also Doc. 50-6, Exh. F.) Eligible Expenses," in turn, are defined as:

> **Eligible Expenses** The following expenses are Eligible Expenses, only to the extent outlined below. If the INSURED MEMBER is a joint occupant of an office, has partners or is a member of a professional corporation, Eligible Expenses are limited to his or her share of such expenses: [listing business equipment loans and leases, depreciation, employee

---

[2] An "insured member" is a person who was a Fellow, Associate Fellow, Medical Student, or Resident of the American College of Surgeons on his or her first insurance date; less than age 60; and at full-time work, and who becomes an insured and remains insured. (Doc. #50-6, Exh. F, pp. 16-17.)

3

>           salaries, insurance premiums, maintenance,
>           other normal and customary fixed expenses,
>           rent, and utilities and services.]

(Doc. #51-1, Exh. A to Exh. 1, p. 8; see also Doc. #50-6, Exh. F.) Expenses that are excluded from being an Eligible Expense include personal expenses, professional services, certain purchases, and repayment of loan principal. (Id., pp. 8-9.) The amount of the benefit payable by New York Life is "the lessor of: (a) the actual amount of the Covered Expenses the INSURED MEMBER incurs for each month of TOTAL DISABILITY; or (b) the Monthly Benefit in force on the date the INSURED MEMBER'S TOTAL DISABILITY began" (Doc. #50-6, Exh. F, p. 8) which "will be paid to the INSURED MEMBER." (Id.)

**B. Sale of Dr. Spellberg's Medical Practice**

On January 4, 2010, Dr. Spellberg sold Naples Urology and all its assets to 21st Century Oncology, LLC (21st Century), a for-profit medical and cancer treatment provider, through a series of Transaction Documents. Pursuant to the Asset Purchase Agreement (Doc. #51-3), 21st Century purchased specified assets of Naples Urology and assumed certain of its liabilities and obligations for a purchase price of just over $214,000. 21st Century continued to operate the business under the Naples Urology name.

Pursuant to a contemporaneous Agreement (Employment Agreement)(Doc. #50-2, Exh. B; Doc. #51-4), 21st Century employed Dr. Spellberg as a full-time physician specializing in urology for two years, through December 31, 2012, at the three Naples Urology

4

office locations Dr. Spellberg formerly owned. (Doc. #68, § IX, ¶¶ 4, 7.) More specifically, the Employment Agreement provides in relevant part:

- Dr. Spellberg is to provide patient care services "as an employee of 21st Century" at the three physical locations where Naples Urology continued to operate (id. at ¶ 1(a)) for an initial term of two (2) years (id. at ¶ 11);

- Dr. Spellberg's specific duties and responsibilities are described in Schedule 1(b) (Job Description) (Doc. #51-4, Exh. 2C, p. 15, ¶1(b)), which set forth that Dr. Spellberg would provide patient care services in the specialty of urology to 21st Century patients; provide on-call services as mutually agreed; assist 21st Century in its administrative functions with respect to its urology division; and serve as Medical Director of the 21st Century Collier County Urology Division;

- the employment is to be full-time, (id. ¶1(c));

- during the employment term Dr. Spellberg was "in an employer/employee relationship with 21st Century" (id. at ¶ 14);

- 21st Century agreed to pay Dr. Spellberg compensation in the amounts and at the times set forth in Schedule 2(a) (id. at ¶ 2(a));

- Dr. Spellberg would receive such other benefits "made available to other similarly situated employees of 21st Century", (id. at ¶ 2(c));

- all billing and collection for Dr. Spellberg's services would be carried out as 21st Century determined in its sole discretion, (id. at ¶ 4);

- Dr. Spellberg assigned to 21st Century any and all of his billings and collections for services he provided under the Employment Agreement, (id. at ¶ 4);

- Dr. Spellberg agreed to turn over to 21st Century any amounts he received for professional services (id. at ¶ 4); and

5

- 21st Century agreed to provide Dr. Spellberg with office space, computer hardware and software, computer support personnel, nursing, staff and scheduling support, and beeper, cell phone and supplies reasonably satisfactory to Dr. Spellberg and comparable to the resources he previously had at the offices prior to the commencement of the Employment Agreement term (id., ¶ 5).

Attached to the Employment Agreement is Schedule 2(a), which outlines the Compensation for Dr. Spellberg. (Doc. #51-4, Exh. 2C, p. 16.) As a Base Salary[3], 21st Century agreed to pay Dr. Spellberg 100% of the Net Profits of his practice pro-rated for any portion of a year worked. (Id. at 1(b).) Net Profits were computed pursuant to the formula of Net Revenues less direct Costs (determined on an accrual basis of accounting) incurred by 21st Century in connection with the medical services personally performed or supervised by Dr. Spellberg at the three offices. (Id. at 1(a)(ii)). These Costs included rent, taxes, utilities, supplies, capital (other than goodwill) and equipment acquisitions costs, staff salaries and benefits, Dr. Spellberg's fringe benefits, the costs of Dr. Spellberg's continuing medical education and medical malpractice insurance premiums, and administrative expenses (such as accounting, legal, human resources, and billing and collection). (Id. at 1(a)(ii)). It

---

[3] 21st Century paid 75% of the aggregate Base Salary earned for the previous year, in advance, in bi-weekly installments, and then reconciled the Estimated Based Salary with the Actual Base Salary Dr. Spellberg should have received by either paying him the excess amount or deducting the overpayment from the next Estimated Base Salary. (Doc. #51-4, Exh. 2C, 1(c).)

6

was further agreed that 21st Century could not incur expenses over and above the average historical expenses incurred by Dr. Spellberg for the two prior years without Dr. Spellberg's consent. (Id. at 1(a)(ii)).[4] Dr. Spellberg was also entitled to a bonus or future bonuses based on patient therapy services. (Id. at ¶ 2.)

---

[4]Verbatim, the Employment Agreement provides:

> "Net Profit" shall mean Net Revenues decreased by the direct costs determined on an accrual basis of accounting (collectively, the "Costs") incurred by 21st Century in connection with the medical services personally performed or supervised by you at the Office including, without limitation, rent, taxes, utilities, supplies, capital (other than goodwill) and equipment acquisition costs (as depreciated and amortized using the same depreciation and amortization method used by 21st Century for 21st Century's financial statements prepared in accordance with generally accepted accounting principles consistently applied), staff salaries and benefits, your fringe benefits, the costs of your CME and medical malpractice insurance premiums, administrative expenses, such as accounting, legal, human resources, and billing and collection; provided, however, that 21st Century shall not during the Employment Term, without your prior consent (which you may give or withhold in your sole and absolute discretion), incur expenses over and above the average historical expenses incurred by you for the two (2) year period immediately preceding your employment hereunder as set forth, in the Financial Statements."

(Doc. #50-2, Exh. B, ¶ 1(a)(ii))(emphasis added)(internal footnote omitted).

### C. Dr. Spellberg's Disability

On or about July 5, 2012, while still an employee of 21st Century, Dr. Spellberg became totally disabled as a result of complications from surgery to correct neck and nerve injuries suffered in a 2009 motor vehicle accident. Although Dr. Spellberg did not see any patients after July 3, 2012, Naples Urology continued to operate through December 2012, through the efforts of his physician's assistant, and Dr. Spellberg continued to receive a monthly draw of approximately $25,000 per month from 21st Century. Naples Urology operated at a loss each month from August 2012 through December 2012, the termination date under the Employment Agreement. Dr. Spellberg thereafter became a consultant for 21st Century and remains in that capacity.

### D. Dr. Spellberg's Claim for Covered Expenses

Dr. Spellberg timely submitted a claim for payment of Eligible Expenses incurred during the claim period of July, 2012 through December, 2012. The expenses Dr. Spellberg claimed are taken from 21st Century's profit and loss spreadsheet, which reflects $489,492.47 of expenses in excess of the revenue generated during the claim period.

By letter dated January 2, 2013, New York Life denied Dr. Spellberg's claim because he was not eligible for such benefit. New York Life asserted this was the case because Dr. Spellberg had sold Naples Urology, and under his Employment Agreement he did not

8

"own a company that incurs eligible expenses." (Doc. #50, Ex. H.) Dr. Spellberg asserts entitlement to past due expense benefits in the amount of $100,000, if it is determined that he incurred the expenses, equal to the $20,000 maximum monthly benefit in eligible expenses each month from August 2012 through December 2012.

**II.**

New York Life asserts that 21st Century, not Dr. Spellberg, "incurred" the claimed expenses, and since 21st Century was not an Insured Member no expense benefits are owed. Dr. Spellberg argues he incurred the expenses because he was "effectively treated as an owner under his employment agreement" and the expenses were applied against his revenue to reduce his compensation. (Doc. #50, pp. 2, 10, 11; Doc. #51, p. 17, 21.)

It is clear that the Policy only requires New York Life to pay Dr. Spellberg expense benefits if Dr. Spellberg "incurred" the expenses. Under the Policy, New York Life will pay for an Insured Member's "Covered Expenses," which are defined as "an Eligible Expense **which an INSURED MEMBER incurs** while insured under the Policy and while TOTALLY DISABLED, . . ." (Doc. #51-1, Exh. A, p. 8; see also Doc. 50-6, Exh. F) (emphasis added). New York Life is obligated to pay an Insured Member the actual amount of Covered Expenses that **the "INSURED MEMBER incurs"** for each month of Total Disability or the Policy limit. (Doc. #51-1, Exh. A, p. 10)(emphasis added). The evidence establishes that: (1) Dr.

9

Spellberg was an "Insured Member" and was insured under the Policy at all relevant times; (2) the expenses at issue were "Eligible Expenses;" and (3) the expenses were incurred during the period of Dr. Spellberg's Total Disability.  The parties do not dispute the basic dictionary definition of "incur" as "to be liable for" or "to have to pay for" (Doc. #50, ¶ 23, pp. 8-9; Doc. #55, p. 2), and the Court accepts this definition.  The Court finds that both as a matter of law and a matter of fact, the expenses were "incurred" by 21st Century, not Dr. Spellberg.

Under the Employment Agreement, 21st Century was responsible for providing Dr. Spellberg with certain business accoutrements, and paying for those expenses of Dr. Spellberg's practice.  Dr. Spellberg was an employee of 21st Century, and had no legal obligation to pay for the expenses.  The expenses and costs were charged to the Naples Urology entity owned by 21st Century, and 21st Century actually incurred the costs and wrote the checks to pay for the expenses.  (Id., 27:1-24, 44:22-24, 51:24-25; see also Doc. #50-1, Exh. A, Spellberg Dep. 37:16-25, Oct. 3, 2014.) Regardless of whether Dr. Spellberg's revenue covered the expenses, 21st Century was obligated to pay the expenses.

The fact that Dr. Spellberg's compensation formula factored in expenses did not cause the expenses to be "incurred" by Dr. Spellberg.  Dr. Spellberg was entitled to receive 100% of the Net Profits of his practice, plus certain bonus payments unrelated to

10

his base salary.  While expenses had the effect of reducing Dr. Spellberg's compensation, Dr. Spellberg did not become liable for the expenses and did not directly pay any of the expenses.  21st Century remained the party responsible for paying the expenses.

Instead of supporting Dr. Spellberg's current position, the compensation formula in the Employment Agreement and the practice of the parties confirm that the parties understood that 21st Century incurred the expenses.  Dr. Spellberg was entitled to 100% of the revenue he generated, less costs "incurred by 21st Century." (Doc. #51-4, Exh. 2C, p. 16, ¶ 1(a)(ii).)  It is undisputed that the practice of the parties was that the expenses were paid by 21st Century and then deducted from the total revenue figure, with the net revenue being paid to Dr. Spellberg.  If the expenses had not been "incurred by 21st Century", none of them could have been deducted, and Dr. Spellberg would simply have received 100% of the revenue.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion to Exclude Defendant's Expert Testimony (Doc. #49) is **GRANTED** to the extent that the expert testimony was not considered in deciding the cross-motions for summary judgment.

2. Plaintiff David M. Spellberg's Motion for Summary Judgment (Doc. #50) is **DENIED.**

3. Defendant New York Life Insurance Company's Motion for Summary Judgment (Doc. #51) is **GRANTED.**

4. The Clerk shall enter judgment in favor of defendant and against plaintiff, who shall take nothing.  The Clerk is further directed to terminate all pending motions and deadlines as moot, and close the file.

5. The Final Pretrial Conference scheduled for April 27, 2015, is **cancelled.**

**DONE AND ORDERED** at Fort Myers, Florida, this __23rd__ day of April, 2015.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE


Copies:
Counsel of record